IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EMERGENCY PROVIDERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-0008-CV-W-SOW |
| | ) | |
| METROPOLITAN AMBULANCE | ) | |
| SERVICES TRUST, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Before the Court are defendant City of Kansas City, Missouri's Motion for Summary

Judgment (Doc. #81, defendant City of Kansas City, Missouri's Suggestions in Support, plaintiff

Emergency Providers, Inc.'s Suggestions in Opposition, and defendant City of Kansas City,

Missouri's Reply. For the reasons stated below, defendant City of Kansas City, Missouri's

motion is granted in part and denied in part.

I. Background

Defendant City of Kansas City, Missouri (hereinafter referred to as the "City") moves for

summary judgment on all of the claims asserted against the City by plaintiff Emergency

Providers, Inc. (hereinafter referred to as "EPI"). The undisputed material facts relevant to the

pending motion for summary judgment are as follows: plaintiff EPI is a Missouri corporation.

The City is a municipal corporation, organized and existing under the laws of the State of

Missouri. Defendant Metropolitan Ambulance Service Trust (hereinafter referred to as

"MAST") was created on September 11, 1979 pursuant to (1) the terms of a Trust Indenture

dated September 11, 1979 between John M. ("Jack") Urie, as Trustor, and seven trustees therein

named; and (2) certain ordinances of defendant City. At the time the Trust Indenture was executed, Mr. Urie was serving as Director of Finance for the City.

It is undisputed that defendant City created defendant MAST for the furtherance of its governmental objectives. Defendant City is the residual beneficiary under the Trust Indenture establishing MAST. Defendant City must consent to any change in the Trust Indenture establishing MAST. The mayor of defendant City appoints the members of defendant MAST's Board of Trustees. In addition, the Trust Indenture requires that two members of the City Council of defendant City be members of defendant MAST's Board of Trustees. Once appointed, the members of the Board of Trustees may only be removed by an order of the Circuit Court for Jackson County, Missouri "for cause shown."

Defendant City asserts that some City officials serve as non-voting *ex officio* members of the Board of Trustees. Plaintiff states that during the time period at issue, the Trust Indenture did not specify whether the *ex officio* members of the Board of Trustees would vote.

Under the Trust Indenture, the City does not have the right to control the conduct of MAST with respect to matters entrusted to MAST; however, the City has passed ordinances designed to regulate the ambulance system in the City. The City, acting through its Director of Health, serves as the primary system regulator. In that capacity, the Director of Health may promulgate rules and regulations for the operation of the system. This includes the establishment of medical protocols and practices that establish the standard of care that the medical care provider for the system must meet. The Director of Health may also approve communications systems and coordinate the interaction between MAST and the City's fire department. If the Director of Health determines that the rates to be charged by MAST are inappropriate, the

2

Director may disapprove the proposed rates. Under the Emergency Medical Services ("EMS") Ordinance, the medical protocols of the EMS System of defendant City, which directed the paramedics, emergency medical technicians and systems status controllers of plaintiff EPI, were recommended by the Emergency Physicians Advisory Board (established under the EMS Ordinance) and approved by the Director of Health of defendant City.

It is undisputed that the City has provided a subsidy to MAST during every year of its existence for indigent health care. The majority of the operating funds that MAST uses are from other sources. Defendant City asserts that the contracts by which the subsidy was provided to MAST during the time period at issue in this case state that MAST is an independent contractor and not the City's agent. The contracts also state that MAST has no authority to take any action or execute any documents on behalf of the City. Plaintiff EPI contends that the contract between the City and MAST "bestows legislative and/or executive authority to an entity now claimed to be private." Plaintiff fails to provide any authority for this contention other than plaintiff's counsel's own interpretation of the contract.

Plaintiff EPI asserts that the City provided MAST space on its radio towers for MAST's radio equipment. The City does not dispute this assertion. It is undisputed that MAST vehicles use license plates provided by the City. Defendant City owned the facility at 59th and Troost that was leased to MAST for a nominal amount. The City also provided the initial financing to buy an ambulance license from ASI as well as financing for MAST to purchase its radio communications system. The City also guaranteed a $2,000,000.00 line of credit for MAST at Bank of America.

Defendant MAST has directly or indirectly provided ambulance service to the residents of

Kansas City, Missouri for more than twenty years. Defendant MAST has also provided ambulance service to other cities and other incorporated and unincorporated areas in Missouri and Kansas, pursuant to contracts and agreements as well as custom.

From July 1, 1988 through June 30, 2003, plaintiff EPI served as the operations contractor for MAST, providing medical care to citizens of Kansas City, Missouri. In that role, plaintiff EPI provided dispatchers, paramedics, emergency medical technicians, and other persons essential to provide medical care. This was done pursuant to a contract between EPI and MAST by which EPI was paid an established amount of money each month for its services. Defendant City claims that it was not a party to the 1998 or 2001 contracts between MAST and EPI. Plaintiff EPI states that this is a controverted fact. Plaintiff relies on the deposition of Mr. Palmer who, when asked if anyone from the City signed the contracts, responded, "Not unless you count MAST as an agent or agency of the City."

It is undisputed that plaintiff EPI's last contract with defendant MAST to provide ambulance operational services expired by its own terms on June 30, 2003. Prior to the expiration of this contract, MAST put out a Request For Proposals which specifically provided a right to reject all proposals. On February 27, 2003, the Board of Trustees for MAST passed a resolution directing MAST to continue to negotiate with EPI to contract for paramedic services because EPI's initial proposal did not permit EPI to offer services at a reasonable price. The February 27, 2003 Resolution included an offer price and a stipulation that such offer shall include an agreement by plaintiff EPI to dismiss Counts 2 through 6 of its lawsuit against defendant MAST without prejudice and to agree to binding arbitration concerning plaintiff's claims in Count 1.

4

On March 27, 2003, the Board of Trustees of MAST passed a resolution stating that its Request For Proposals process had been unsuccessful. The resolution stated that "there is an absence of qualified proposals at reasonable costs for the provision of paramedic ambulance and wheelchair van services." The resolution also stated that MAST was to be prepared to act as operations contractor upon the expiration of the 2001 contract with EPI in accordance with Section 34-366, Code of Ordinances for Kansas City, Missouri.

MAST was authorized by the ambulance code to act as temporary operations contractor of the system, for up to one year, in two situations: (1) an emergency in which the public health and safety are threatened by the inadequate performance of an existing operations contractor; or (2) by the absence of qualified bids or proposals at reasonable costs for the performance of the required services. It is undisputed that the City contracted with MAST for the period from July of 2003 through June of 2004. During this time period, MAST directly operated the ambulance service. On January 29, 2004, the City passed an ordinance extending the length of time MAST could operate the system for an additional year.

For eleven or twelve months during the time period that MAST was directly operating the ambulance service, defendant City provided accounting services to MAST at no charge.

Plaintiff adds that on April 2, 2002, a ¼ % sales tax was put before voters pursuant to Ordinance No. 011594 of the City to provide for, among other things, ". . . capital improvements for . . . emergency medical response." The sales tax was approved and, according to plaintiff, millions of dollars of the sales tax monies have been paid to MAST by the City for the purchase of capital equipment. The City claims that it budgeted a lump sum to MAST for capital improvements in the amount of $1.5 million. The City does not dispute the fact that MAST

5

purchased capital equipment with the money budgeted.

On April 5, 2005, pursuant to Ordinance No. 041259 of the City, the Health Levy of the City was increased from fifty cents to seventy-two cents per one hundred dollars assessed valuation on real and tangible personal property, with 3½ cents of the levy to be used for ambulance services. The City clarifies that the City Council voted to put the levy before voters and that the levy was to be a temporary one, lasting for nine years.

It is also undisputed that any contract between MAST and a prospective ambulance operations contractor that is arrived at through a negotiated process, rather than through competitive bidding or a Request for Proposals process, is required to be presented by MAST to a City review committee comprised of the City's Director of Health, the Director of Finance, and the City Manager or his designee.

Finally, it is undisputed that in addition to serving the City of Kansas City, Missouri, MAST provides services in Kansas City, Kansas and Edwardsville, Kansas. MAST also provides non-emergency service in Johnson County, Kansas. MAST serves the unincorporated areas of Clay, Platte, and Jackson Counties. MAST charges fees for its services and generates revenues representing a significant part of its costs of operation. Beginning in May of 2000 and continuing through the period when plaintiff EPI served as the operations contractor, MAST provided wheelchair van service throughout its contract service area.

## II. Standard

Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(e). The moving party has the initial burden of establishing, by way of the pleadings, depositions, answers to

6

interrogatories, admissions on file, and affidavits, if any, the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986). If the moving party makes this initial showing, then the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

In ruling on a motion for summary judgment, this Court's function is not to weigh the evidence or make credibility determinations, but to "determine whether a dispute about a material fact is genuine." Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376-77 (8th Cir. 1996)(citing Anderson, 477 U.S. at 248-49). The Court must view the facts in the light most favorable to the non-moving party and allow that party the benefit of all reasonable inferences to be drawn from the evidence. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed.2d 142 (1970).

III. Discussion

This dispute between plaintiff EPI and defendants MAST and the City arises within the context of the City's decision to establish a "public utility model" for the provision of ambulance services. The City explains that the implementation of this model is achieved through a three-part system: (1) Ambulance System Regulator; (2) Business Operations; and (3) Medical Care Provider. The City admits that it is the primary system regulator. The City states that MAST serves as the medical care provider, but until 2003 did so by contracting with a private business.

A. The City's Relationship With MAST

The City argues that EPI confuses "the existence of MAST with the City." The City contends that it cannot be held liable for any claims plaintiff EPI may have against MAST

7

because MAST is not the City's agent nor a department or agency of the City. Not surprisingly, plaintiff EPI counters that MAST is an agent of the City.

In order to establish an agency relationship, plaintiff EPI must show: (1) that the agent holds a power to alter relations between the principal and a third party; (2) that the agent is a fiduciary with respect to matters within the scope of the agency; and (3) that the principal has the right to control the conduct of the agent with respect to matters entrusted to the agent. *See* State ex rel. Ford Motor Co. v. Bacon, 63 S.W.3d 641 (Mo. 2002); Restatement (Second) of Agency §§ 12-14.

"The existence of an agency relationship is ordinarily a question of fact for the trier of fact." Tom Lange Co., Inc. v. Cleaning by House Beautiful, 793 S.W.2d 869, 871 (Mo. Ct. App. 1990)(*citing* Tedesco v. Bekker, 741 S.W.2d 896, 899 (Mo. Ct. App. 1987)). If the Court determines that there are no conflicts in the evidence, then "the determination of what constitutes agency and whether there is evidence tending to prove the existence of agency is a question of law." Id. (*citing* Tri-City Const. v. A.C. Kirkwood & Assoc., 738 S.W.2d 925, 931 (Mo. Ct. App. 1987)). If there "may be a fair difference of opinion as to the existence of the relationship," then the issue is to be resolved by a jury. Scott v. SSM Healthcare St. Louis, 70 S.W.3d 560, 566 (Mo. Ct. App. 2002)(*citing* Bargfrede v. American Income Life Ins. Co., 21 S.W.3d 157, 161 (Mo. Ct. App. 2000)). Based upon the evidence discussed below, the Court finds that there may be a fair difference of opinion as to whether MAST acted as an agent of the City. Therefore, this issue must be resolved by a jury.

The City argues that while it established MAST to operate an ambulance system, the City does not have the right to control MAST's conduct with respect to the matters entrusted to

8

MAST.  Plaintiff EPI has identified significant evidence to the contrary.

The City relies heavily on its funding contract with MAST which states that MAST is an independent contractor and not the City's agent.  The City uses this language to support its claim that the contract evidences the City's intent that MAST is not to act as its agent and that in the absence of an intent to establish an agency relationship, MAST cannot be characterized as the City's agent.  The City adds that any contract with the City must be in writing and there is no contract making MAST an agent of the City.  The City suggests that all of plaintiff EPI's claims against the City should be dismissed on this basis alone.

Plaintiff EPI points out, however, that the Trust Indenture that was used to create MAST gives  the City significant control over MAST regardless of any language the City included in the funding contract.   Plaintiff EPI states that the key issue is whether the City "has such dominion over MAST that it effectively controls MAST such that MAST is an agent or a department or agency of the City."

Plaintiff EPI points out that the mayor appoints all of the Trustees of MAST.  The City claims that this fact is irrelevant.  Two of the Trustees must be City Councilpersons.  In addition, the Trust Indenture states that the Trustor is "without any power whatsoever, at any time to alter, amend, revise, modify, revoke or terminate any of the provisions of this Indenture, *except with the consent of the City of Kansas City, Missouri*" (emphasis added).  The City is also the beneficiary of the Trust.

It is required by the Trust Indenture that the Trustees file "an annual audit of the Trust property and operations" with the Mayor and the Finance Director of the City.  The City must approve the fees for the use of the services provided by the Trust.  Finally, the Trust Indenture

allows the City to make changes in the size and qualifications of the members of the Board of Trustees. In other words, the Trust Indenture gives the City considerable control over MAST.

In addition to the provisions contained in the Trust Indenture, the City exerts further control over MAST through the City's Ambulance Ordinance, Chapter 34, Article IX, June 30, 2003 Code of Ordinances. The City's Ambulance Ordinance allows the Director of Health of the City to "forbid MAST to bill at a rate deemed too high." The Ordinance requires MAST to provide quarterly performance reports to the Director of Health and to conduct a study of market conditions with respect to obtaining an ambulance operations contract.

MAST is also required to submit any negotiated contract with a proposed operations contractor to a City review committee for approval and has done so. The Ambulance Ordinance states that MAST may only contract with an operations contractor for a period of five years or less. MAST must keep its records open for inspection by the City's Director of Health. In addition, MAST is required to submit an annual report to the City's Director of Health. MAST may act as the temporary operations contractor only in certain specified circumstances and for a limited period of time.

The City exercises additional control over MAST through control of MAST's funding. The City argues that the fact that it provides funds to MAST is irrelevant as it does not transform MAST into a municipal agency. Yet, the City has enacted sales tax increases and public health tax levies to provide additional funds for MAST. MAST's own auditors, KPMG, using the Governmental Accounting Standards Board standards, refer to MAST as "A Component Unit Part of the City of Kansas City, Missouri."

Plaintiff EPI adds that the City guaranteed a line of credit for MAST which would violate

10

Article VI, Sections 23 and 26 of the Missouri Constitution if MAST is not a public agency and a part of the City. Section 23 of the Missouri Constitution states:

> No county, city, or other political corporation or subdivision of the state shall own or subscribe for stock in any corporation or association, *or lend its credit or grant public money or ting of value to or in aid of any corporation, association,* or individual, except as provided in this constitution.

(emphasis added). Section 25 of the Missouri Constitution also provides that, "No county, city, or other political corporation or subdivision of the state shall be authorized to lend its credit or grant public money or property to any private individual, association or corporation . . ." [with certain exceptions not applicable to this case]. Plaintiff EPI concludes that either MAST must be regarded as an agent or agency of the City or the City has violated the Missouri Constitution. The City responds by characterizing MAST as a public not-for-profit corporation. Notably, the City fails to provide any support for this characterization.

While the City relies on the findings in Gill Const., Inc. v. 18th & Vine Auth., 157 S.W.3d 699 (Mo. Ct. App. 2004), plaintiff EPI correctly distinguishes Gill as a case that involved a not-for-profit corporation as opposed to a trust. The Gill case also raised different types of claims than those brought by plaintiff EPI in this case.

In contrast, plaintiff EPI relies on State ex rel. Bd. of Trustees of City of North Kansas City Memorial Hosp. v. Russell, 843 S.W.2d 353 (Mo. 1992). In the Russell case, the Missouri Supreme Court examined the question of whether the Board of Trustees of the City of North Kansas City Memorial Hospital was a separate entity from the City of North Kansas City. Id. at 355. The Board had been established by the City of North Kansas City pursuant to Chapter 96. Mo. Rev. Stat. Id. The mayor of the City of North Kansas City appointed the trustees with the

11

approval of the council and the trustees could be removed only for certain specified reasons.  Id. The powers of the Board were set out in the statute.  Id. at 356.

After examining the statute, including the fact that the statute did not give the Board any authority to have perpetual existence or to be a body corporate, the Missouri Supreme Court concluded that the Board was not an entity at all, but part of the City of North Kansas City.  Id. at 356-57.  The facts of Russell are much more comparable to those in this case than the facts of the Gill case relied upon by the City.

Plaintiff EPI suggests that there is no authorization for the City to create an organization that was formed by the City, is subject to control by the City, provides an essential service of the City, receives funding from the City, and yet is neither an agent or agency of the City.  As stated above, the Court finds that the issue of whether or not MAST was an agent or agency of the City during the relevant time period is one to be resolved by a jury.  The City's motion for summary judgment on this basis is denied.

Finally, before addressing EPI's specific claims, the City argues that many of EPI's claims rest on an assumed right to a new contract.  The City argues that EPI had no legitimate expectation of a new contract.  It is undisputed that plaintiff EPI's last contract with MAST expired by its own terms on June 30, 2003.  Plaintiff EPI concedes that it had no legitimate expectation of a new contract; however, EPI contends that there is a right to presume that a bidder will be treated fairly.  EPI states that it was the only bidder when MAST solicited bids and that the City and MAST failed to follow their own procedures in evaluating EPI's bid.  The Court will address these arguments in connection with the specific claims as set forth below.

B.      Count I - Fraud and Misrepresentation

Case 4:05-cv-00008-SOW   Document 103   Filed 03/21/06   Page 12 of 24

Plaintiff EPI contends that in negotiating a new contract in 2001, MAST did not bargain in good faith. Specifically, MAST is accused of providing faulty figures on run volume, which EPI relied on during the negotiations. EPI alleges that if MAST had provided accurate figures, EPI would have known it was entitled to greater compensation.

The City asserts that it has sovereign immunity as to Count I, citing Section 537.600, et seq., Mo. Rev. Stat. The City relies on Bailey v. City of St. Louis, 578 S.W.2d 279 (Mo. Ct. App. 1978) which held that providing ambulance services is a governmental action for which a city is protected by sovereign immunity.

Pursuant to Section 537.600.1, Mo. Rev. Stat., defendant City has sovereign immunity "as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, . . . ." The statute goes on to make two exceptions to the City's sovereign immunity. See Section 537.600.1 (1) and (2). Both parties agree that neither exception is applicable in this case.

Plaintiff EPI states that prior to September 12, 1977, cities generally lacked sovereign immunity if the activity at issue involved proprietary functions of the city, but had immunity if the activity involved the governmental functions of the city. See Russell, 843 S.W.2d at 358. Plaintiff asserts that there is a fact question to be decided by a jury as to whether the defendant City's activities in setting up and interacting with MAST were governmental or proprietary. It is undisputed that MAST operates both within and outside of the City of Kansas City, Missouri. MAST also operates outside the State of Missouri. MAST is licensed in both Missouri and Kansas. This seems to place MAST outside the realm of pure governmental activity.

Also weighing in favor of a finding of proprietary activity are the facts that MAST

13

charges fees for its services and operated a wheelchair and van service both inside and outside the city limits of Kansas City, Missouri during the time period at issue in this case.

Accordingly, the City's Motion for Summary Judgment on this claim is denied.

C.     Count II - Quantum Meruit

EPI has alleged that since the contract it negotiated with MAST in 2001 was based upon certain false representations, the contract is voidable. EPI contends that if it had been paid more money, the City would have made a larger subsidy payment to MAST to operate the ambulance system. EPI asserts that the City is therefore liable for the value of EPI's services for the two years from July 1, 2001 through June 30, 2003.

The City argues that this claim must be dismissed because pursuant to Section 432.070, Mo. Rev. Stat., all contracts with the City must be in writing, properly executed by the parties. Since MAST was not authorized by the City to contract on its behalf with EPI, the contract between MAST and EPI cannot be imputed to the City. The City cannot be held liable on a theory of *quantum meruit* as the Missouri Supreme Court has held that the theory of *quantum meruit* cannot be invoked against a municipal corporation. Layne v. City of Windsor, 442 S.W.2d 497, 500 (Mo. 1969). "'The fact a municipality has received the benefit of a performance by the other party does not make the municipality liable either on theory of a ratification, estoppel or implied contract.'" Id. (*quoting* Kansas City v. Rathford, 353 Mo. 1130, 186 S.W.2d 570 (Mo. 1945)).

Plaintiff EPI states that it believes it is entitled to proceed against the City in *quantum meruit* at this time, notwithstanding the provisions of Section 432.070, Mo. Rev. Stat. Plaintiff EPI has not provided the Court with any authority to support its position.

14

The Court finds that plaintiff cannot hold the City liable on a theory of *quantum meruit*. Defendant City's Motion for Summary Judgment is granted as to plaintiff's claim for *quantum meruit*.

D.  Count III - Breach of Contract

Plaintiff EPI has alleged that MAST did not pay interest on late payments, that MAST sold or traded-in old equipment on the purchase of new equipment for which it was obligated to pay EPI the value of the old equipment, failed to pay EPI bonuses for meeting response times, and interfered with EPI's workforce. Plaintiff EPI seeks to hold defendant City liable for MAST's alleged breaches of the contract between MAST and EPI.

To establish a breach of contract claim, plaintiff EPI must show the existence of a valid contract, the rights and obligations of the respective parties, a breach, and damages. Rhodes Engineering Co., Inc. v. Pub. Water Supply Dist. No. 1 of Holt County, 128 S.W.3d 550, 560 (Mo. Ct. App. 2004). In this case, plaintiff EPI never had a written contract with the City. As stated above, pursuant to Section 432.070, Mo. Rev. Stat., all contracts with the City must be in writing. Therefore, plaintiff EPI cannot assert a breach of contract claim against the City.

EPI argues that since MAST is the City's agent, the City is responsible for the contract that MAST entered into with EPI. Even if MAST is an agent of the City, it cannot enter into contracts on behalf of the City unless authorized by law and in writing to do so. Section 432.070, Mo. Rev. Stat. Plaintiff EPI has not identified any such authorization giving MAST the authority to enter into a written contract on behalf of the City.

Accordingly, defendant City's Motion for Summary Judgment on plaintiff's breach of contract claim is granted.

15

E.    Count IV - Tortious Interference with Contract

Next, EPI has alleged that MAST trustees and employees discussed with plaintiff EPI's unionized workforce the options for the ambulance system should EPI fail to obtain a new contract to provide services.  Plaintiff EPI claims that these discussions damaged EPI's ability to manage its workforce, increased EPI's costs in responding to the request for proposals issued by MAST, and damaged its "legitimate expectation of a continued contractual relationship with its workforce."

Defendant City argues that it is entitled to sovereign immunity as to this claim.  In addition, the City argues that no official or employee of the City is alleged to have done any act that interfered with EPI's labor agreement with Local 34 of the International Association of Fire Fighters, AFL-CIO.

In order to state a claim for tortious interference with contract, plaintiff EPI must show: "(1) the plaintiff was involved in a valid business relationship; (2) the defendant was aware of the relationship; (3) the defendant intentionally interfered with the relationship, inducing its termination; (4) the defendant acted without justification; and (5) the plaintiff suffered damages as a direct result of defendant's conduct."  Clinch v. Heartland Health, — S.W.3d —, 2006 WL 88647 (Mo. Ct. App. 2006)(citation omitted).

Plaintiff EPI asserts that members of MAST management as well as two members of the MAST Board of Trustees, who are also City councilpersons, met with representatives of Local I-34 at a time when the Local was representing the employees of EPI and bargaining for a new contract with EPI.  Plaintiff EPI adds that numerous newsletters issued by Local I-34 refer to discussions with the MAST Trustees and managers as well as the City's councilpersons.

16

If the jury finds that MAST is an agency of the City or an agent of the City, then the City is not protected by sovereign immunity on this claim. Accordingly, defendant City's Motion for Summary Judgment is denied on plaintiff's claim for tortious interference with contract.

F.    Count V - Conversions of Intellectual Property

Plaintiff EPI alleges that MAST discussed job opportunities with EPI management officials prior to the end of the contract between EPI and MAST. In addition, EPI claims MAST used the EPI system for scheduling employees beyond the three-month period for which MAST paid a licensing fee. Finally, EPI alleges that MAST hired EPI employees to provide training rather than hiring EPI.

Defendant City contends that EPI cannot maintain a conversion claim because no tangible item was allegedly converted. In addition, the City argues that it did not take any of the alleged actions and, even if it did, it would be protected by sovereign immunity on this claim.

"Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights . . . . Conversion can be proved by demonstrating (1) a tortious taking, (2) 'any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to [the] owner's rights,' or (3) 'refusal to give up possession to the owner on demand, even though the defendant's original possession of the property was proper.'" Stulz v. Citizens' Bank and Trust Co., 160 S.W.3d 423, 427 (Mo. Ct. App. 2005)(citations omitted). Plaintiff EPI claims that it has been damaged by "the taking of EPI's continuing education client list by Jason White and his subsequent contacting of EPI's continuing education clients;" by the taking of "EPI's shift schedules" and the refusal to "pay for their use after the first three months;" and by the use of job descriptions taken from EPI's

Standard Operating Procedures without the permission of EPI.

EPI contends that the client list was a protected document. EPI relies on the deposition of Jason White who admitted to taking the client list off the desk of one of EPI's employees. Plaintiff EPI asserts that MAST then used the list to contact EPI's customers which led to a profit for MAST.

Similarly, MAST has admitted in response to interrogatory questions that it continued using the shift schedules past September 30, 2003, the date through which MAST had paid for their use. EPI also claims that after being unwilling to purchase the use of EPI's Standard Operating Procedures, MAST simply used the procedures.

EPI argues that the City is not protected by sovereign immunity on this claim and may be held liable because MAST is an agent or agency of the City.

Given the Court's finding that the issue of whether or not MAST is an agent or agency of defendant City is a jury questions, the City's Motion for Summary Judgment on this claim is denied at this time.

G.      Count VI - Retaliation

Plaintiff EPI has alleged that the City retaliated against it based upon EPI's decision to exercise its First and Seventh Amendment Rights. The City claims that it did not engage in any wrong-doing and cannot be held liable under 42 U.S.C. §1983 as a result of the acts of MAST.

In order to hold the City liable on this claim, plaintiff EPI must show that EPI had a right protected by the United States Constitution or federal law that was violated by the City and that the deprivation of that right was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiff EPI must prove that a municipal policy or custom was

the moving force behind the constitutional deprivation. Monell v. New York City Dep't of Social Services, 436 U.S. 658, 695-96 (1978). The City states that EPI has not alleged any such policy and the claim should be dismissed on that basis alone. This Court agrees.

Plaintiff EPI relies on Bd. of County Comm'rs, Wabaunsee County, Kansas v. Umbehr, 518 U.S. 668 (1996). In Umbehr, the trash collector for the county, Umbehr, had a contract that provided for automatic renewals on an annual basis. 518 U.S. at 671. Mr. Umbehr criticized the county commission and alleged that he was punished for doing so by having his contract terminated. Id. The United States Supreme Court held that an independent contractors' rights under the First Amendment are protected and the balancing test set forth in Pickering v. Bd of Educ. of Township High Sch. Dist. 205, Will County, 391 U.S. 563 (1968) applies. Id. at 672. EPI claims that its allegations, as contained in its initial Petition, about MAST failing to make payments due under its contract with EPI and seeking the appointment of a receiver for MAST caused MAST not to renew EPI's contract.

It is not fatal to plaintiff EPI's retaliation claim that its contract with MAST did not have an automatic renewal provision and, in fact, expired by its own terms in June of 2003. *See* Mangieri v. DCH Healthcare Auth., 304 F.3d 1072, 1076 (11th Cir. 2002). EPI did have a bid pending with MAST and had been the contractor for MAST for more than fourteen years at that time.

The difficulty with plaintiff's attempt to hold the City liable on this retaliation claim is that plaintiff has not identified any evidence that its bid was not accepted because of some municipal policy or custom on the part of the City. The only City policy discussed by plaintiff EPI is not applicable to the facts of this case.

19

Plaintiff EPI makes certain allegations about the City's Mayor and members of the City Council; however, none of those allegations are supported by citations to the record before this Court. Plaintiff cannot rely on speculation or conjecture at this stage of the proceedings. Plaintiff cannot hold the City liable on a claim under §1983 on the basis of *respondeat superior*. Plaintiff's failure to identify any evidence suggesting that the City deprived plaintiff EPI of its Constitutional rights pursuant to a City policy or custom requires the Court to grant defendant City's Motion for Summary Judgment on this claim.

H.    Count VII - Inverse Condemnation

Plaintiff EPI contends that because it was entitled to the award of the ambulance and wheelchair van contract, it was also "entitled to a use agreement with respect to a portion of the premises formerly occupied by EPI . . . with the payment of only nominal ($100.00) license fee for the entire term of the RFP . . . ." Plaintiff EPI claims that this license constitutes an interest in real estate. Plaintiff alleges that MAST "hired substantially all of EPI's employees, purchased or otherwise appropriated EPI's intellectual property, purchased substantially all of EPI's equipment and essentially put EPI out of business." EPI seeks to hold the City liable on the theory that MAST is an agent or agency of the City.

It is undisputed that all of EPI's unionized work force and all but 13 members of its management and clerical staffs were hired by MAST when EPI's contract expired in June of 2003. In order to state a claim for inverse condemnation, EPI must show that the City appropriated some valuable property right that EPI acquired by the legal and proper use of its property. Conlon Group, Inc. v. City of St. Louis, 980 S.W.2d 37, 41 (Mo. Ct. App. 1998). EPI must demonstrate that it was not paid for the appropriation of the property or a right in the

20

property. Wolfe v. State ex rel. Missouri Highway and Transp. Comm'n, 910 S.W.2d 294, 299 (Mo. Ct. App. 1995).

After June 30, 2003, EPI did not have a contract with any entity to provide ambulance services. The fact that EPI's workers may have chosen to go to work for MAST does not show an appropriation of property. EPI's workers were free to leave EPI at any time, for any reason. EPI's own brief concedes that MAST *purchased* certain equipment and other property. To the extent MAST and the City are alleged to have appropriated EPI's intellectual property, those allegations form the basis of Count V and have been allowed to remain for trial.

Plaintiff has failed to demonstrate that it has a viable claim for inverse condemnation. Therefore, the City's Motion for Summary Judgment on this claim is granted.

I.      Count VIII - Violations of Ordinances and Bid Processes

EPI alleges that during the bid process, MAST and defendant Jantsch, Nace, Wheeler, Ford, Weaver, and Schermerhorn violated the terms of the EMS Ordinance and violated the terms of the Requests for Proposals, that such actions were intentional, and that the City acquiesced and agreed to such actions.

The City argues that since plaintiff's claim "sounds in tort," the City is protected by sovereign immunity.

EPI has alleged that MAST did not determine whether EPI's proposal presented reasonable costs, only that MAST determined it could not afford the proposal presented by EPI and, therefore, an emergency existed allowing MAST to take over operation of the ambulance system. The City responds that if there is no money to pay the bill, it is not a reasonable proposal. The City states that MAST believed at the time that it could provide services for less

than EPI proposed.

The statute at issue states:

> In the event of an emergency in which the public health and safety
> are threatened by the inadequate performance of an existing
> operations contractor, or by the absence of qualified bids or
> proposals *at reasonable costs for the performance of the required
> services*, MAST may act as operations contractor for the duration
> of the emergency, but in no event longer than one year.

Section 34-366(h) of the Ambulance Ordinance (emphasis added). EPI has alleged that the
MAST Board never considered whether EPI's proposal was "at reasonable costs for the
performance of the required services" and thereby violated the Ordinance by allowing MAST to
take over as the operations contractor. Plaintiff EPI relies on the deposition testimony of Dr.
Jantsch, Chair of the MAST Board at the time, in which she stated that there was no evaluation
of the reasonableness of EPI's response to the request for proposals, outside the context of
MAST's financial situation.

Plaintiff EPI adds that the City Auditor later found that since MAST sent out an
unrealistic request for proposals, the responses exceeded what MAST wanted to pay. Plaintiff
EPI claims that MAST drove up the costs with an unrealistic request for proposals, claimed it
could not afford EPI's proposal, and then took over the operation of the ambulance system.
Plaintiff has alleged that the City waived response times, funded MAST's takeover, and changed
its ordinances to allow MAST to continue operating the system.

"Applying the Missouri standing requirements, we conclude that an unsuccessful bidder
has standing to challenge a contract that was not fairly bid." Metro. Exp. Servs., Inc. v. City of
Kansas City, 23 F.3d 1367, 1371 (8th Cir. 1994). The Ambulance Ordinance presumes an

22

evaluation of whether a proposal is reasonable for the performance of the required services. Plaintiff has identified evidence that tends to show that its proposal was never evaluated under this standard.

If a jury determines that the City is not protected by sovereign immunity and that MAST is an agent or agency of the City, then the City may be liable on this claim. The City's Motion for Summary Judgment on this claim is denied.

J.      Count IX - Sunshine Law

This claim has not been asserted against the City.

K.      Count X - Missouri Public Policy

Plaintiff EPI has alleged that it had a legitimate expectation that it would enter into a new contract with MAST at the end of its then-current agreement. Plaintiff claims that the City participated in the decision to terminate MAST's contract.

In fact, EPI's contract was not terminated, but expired by its own terms on June 30, 2003. The City argues that plaintiff had no legitimate expectation of being granted a new contract to provide ambulance service. Section 34-366(b)(3), Code of Ordinances, states that any contract with MAST is not to exceed five years in length. Section 34-366(b)(3) states, "Competitive bidding, requests for proposals or negotiations to secure a new ambulance operations contract **shall** occur **at least** every five years." (emphasis added).

Plaintiff has not shown that the City did anything to violate Missouri public policy. The City's Motion for Summary Judgment on this claim is granted.

L.      Count XI - Breach of Asset Purchase Agreement

MAST and EPI entered into an asset purchase agreement and settled this claim prior to

trial. Nevertheless, EPI seeks attorneys' fees. The City was not a party to the asset purchase

agreement and all contracts with the City must be in writing. Therefore, the City cannot be held

liable for any alleged breach of the asset purchase agreement.

IV.  <u>Conclusion</u>

For the reasons stated above, it is hereby

ORDERED that defendant City of Kansas City, Missouri's Motion for Summary

Judgment (Doc. #81) is granted in part and denied in part.  It is further

ORDERED that defendant City of Kansas City, Missouri's Motion for Summary

Judgment is DENIED as to plaintiff's claims for: fraud and misrepresentation (Count I); tortious

interference with contract (Count IV); conversion of intellectual property (Count V); violations

of ordinances and bid processes (Count VIII).  It is further

ORDERED that defendant City of Kansas City, Missouri's Motion for Summary

Judgment is GRANTED as to plaintiff's claims for: *quantum meruit* (Count II); breach of

contract (Count III); retaliation (Count VI); inverse condemnation (Count VII); violation of

Missouri public policy (Count X); breach of asset purchase agreement (Count XI).


/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated:  <u>March 21, 2006</u>